1 | SUSAN E. SEAGER SBN 204824
JACK LERNER SBN 220661
2 | UC IRVINE SCHOOL OF LAW
INTELLECTUAL PROPERTY, ARTS, AND TECHNOLOGY CLINIC
3 | PRESS FREEDOM AND TRANSPARENCY PRACTICE
P.O. Box 5479
4 | Irvine, California 92616-5479
Tel: (949) 824-5447 / Fax: (949) 824-2747
5 | Email: sseager1.clinic@law.uci.edu
Email: jlerner@law.uci.edu
6 |
7 | Attorneys for Plaintiff
PABLO UNZUETA

8 |
9 | **UNITED STATES DISTRICT COURT**
10 | **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**
11 |

PABLO UNZUETA,                              )   Case No.
                                            )
              PLAINTIFF,                     )   **COMPLAINT: INJUNCTIVE**
                                            )   **RELIEF AND DAMAGES**
vs.                                         )
                                            )   1. First Amendment Violation (42
COUNTY OF LOS ANGELES, a                    )      U.S.C. § 1983)
municipal entity; LOS ANGELES               )   2. Fourth Amendment Violation (42
COUNTY SHERIFF'S                            )      U.S.C. § 1983) Excessive Force
DEPARTMENT, a public entity;                )   3. Fifth Amendment Violation (42
SHERIFF ALEX VILLANUEVA, an                 )      U.S.C. § 1983)
individual; and Does 1 through 10, all      )   4. Violation of Privacy Protection Act
sued in their individual capacities,        )      of 1980 (42 U.S.C. § 2000aa)
                                            )   5. Violation of Section 1, Article 2(a)
              DEFENDANTS.                     )      of the California Constitution
                                            )   6. Violation of the Bane Act,
                                            )      California Civil Code § 52.1
                                            )   7. Violation of the California Shield
                                            )      Law, Evidence Code § 1079 and
                                            )      Article 1, § 2(b) of the California
                                            )      Constitution
                                            )   8. Fourteenth Amendment Violation
                                            )      (42 U.S.C. § 1983)
                                            )   9. Violation Penal Code § 853.6
                                            )   10. Violation of Penal Code 851.6(b)
                                            )
                                            )   **DEMAND FOR JURY TRIAL**
                                            )
                                            )
                                            )
_____ )

1
COMPLAINT: INJUNCTIVE RELIEF AND DAMAGES

## I.     JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 based on questions of federal constitutional law and 42 U.S.C. § 1983. This Court has jurisdiction to issue declaratory or injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

2.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because all of the events giving rise to the claims herein occurred in the Central District of California.

## II.    PARTIES

3.     Plaintiff PABLO UNZUETA is a student at California State University, Long Beach, where he has served as video editor, reporter, and photojournalist for the school's *Daily Forty-Niner* newspaper, and a freelance photojournalist who has had his work published in the *Washington Post*, *Harper's Magazine* and Cal Matters.

4.     At all times material herein, defendant COUNTY OF LOS ANGELES ("County") was and is a public entity duly organized and chartered under the laws of the State of California, and was responsible for the hiring, training, and supervising of the conduct of its employees and agents of the County and the Los Angeles County Sheriff's Department and all of its deputies and members.

5.     Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT is a public entity subject to suit under 42 U.S.C. § 1983. *Streit v. County of Los Angeles*, 236 F.3d 552, 565-66 (9th Cir. 2001).

6.     Defendant Sheriff ALEX VILLANUEVA, is and was, at all times relevant to this action, sheriff of the Los Angeles County Sheriff's Department and a policymaker for his department. He is sued in both his individual and official capacities.

7.     The true names of defendants DOES 1 through 10, inclusive, are not now known to Plaintiff who therefore sues these Defendants by fictitious names.

Upon ascertaining the true name of a DOE Defendant, Plaintiff will amend this complaint, or seek leave to do so, by substituting the true name for the fictitious name. Plaintiff is informed and believe, and based thereon allege, that each DOE Defendant is in some manner responsible for the injuries and damages listed in this Complaint.

8.      At all times material herein, defendants were each acting as the employee, agent representative, and officer of every other defendant herein, and within the course and scope of such employment and agency. All defendants were acting under color of state law.

## III.   INTRODUCTION

9.      This is a civil rights action challenging the Los Angeles Sheriff Department's ("LASD") illegal arrest, jailing, and strip-searching of a student journalist, seizure of his camera and cell phone, and "loss" of his camera memory card in violation of his First Amendment right to gather news regarding deputy activity in public places, particularly during protests against deputy brutality and misconduct.

10.     The First Amendment right to film deputies is an essential part of news gathering and benefits the public by providing them with visual information on law enforcement's practices. As far back as 36 years, the U.S. Court of Appeals for the Ninth Circuit has recognized a journalist's First Amendment right to film matters of public interest such as the behavior of police officers during a public demonstration. *See Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). As recently as 2020, the Ninth Circuit has found that police arrests and harassment of journalists documenting Black Lives Matter protests have "'chilled' the exercise of their First Amendment rights." *Index Newspapers LLC v. U.S. Marshals Serv*., 977 F.3d 817, 826 (9th Cir. 2020). There is no qualified immunity for officers who arrest journalists peacefully filming police in public. Similar to Plaintiff's experience with

the LASD, these journalists were arrested while standing on a public street and sidewalk, away from the protesters and filming law enforcement officers. *Id.*

11. Most other courts have recognized this right, too. As the U.S. Court of Appeals for the First Circuit put it: "Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).

12. The U.S. Department of Justice has also recognized that this First Amendment right to record deputies in public is "consistent with our fundamental notions of liberty, promote[s] the accountability of our governmental officers, and instill[s] public confidence in the police officers who serve us daily." Statement of Interest of the United States at 1, *Sharp v. Baltimore City Police Dep't*, No. 11 Civ. 2888 (D. Md. Jan. 10, 2012), ECF No. 24.

13. Notwithstanding this clearly established First Amendment right, LASD deputies arrested Plaintiff – a student journalist – without probable cause. Plaintiff was in the process of lawfully, peacefully gathering news by filming police activity from a public street and sidewalk. Plaintiff was arrested despite clearly identifying himself as a journalist, displaying his press credentials and offering to call his supervisor to confirm his identity as a student journalist.

14. Plaintiff was not prosecuted, because there was no legal basis to do so.

15. The unlawful arrest of Plaintiff was not an isolated event. The LASD has demonstrated a longstanding custom, pattern and practice of unlawfully interfering with the recording of police activity conducted in public view – a pattern revealed with clarity during the protests in Los Angeles following the death of George Floyd in the summer of 2020. For example, on September 14, 2020, LASD deputies threw KPCC reporter Josie Huang to the ground as she was peacefully covering a small protest, arrested her for alleged obstruction of an arrest, ignoring

her cries that she was a reporter, and presented the case to District Attorney Lacey, who refused to press charges. This custom, pattern, and practice is the result of a lack of adequate training regarding the First Amendment right of the press and the public to record police activities in public, a failure to supervise and discipline deputies who retaliate against or interfere with this right, and the deliberate indifference by LASD supervising personnel to a culture of disregard for the constitutional right to record police activity in public.

16.     The LASD violated Plaintiff's clearly established rights under the First Amendment to the United States Constitution by arresting him for exercising his First Amendment right to film and report about deputies performing their official duties in public. The LASD also violated Plaintiff's clearly established rights under the Fourth Amendment to the United States Constitution to be free from arrest and seizure of his property without probable cause.

17.     The LASD violated Plaintiff's rights under the Fifth Amendment to the United States Constitution by seizing both his camera and iPhone, refusing to immediately return those devices, and failing to return his camera memory card that contained years of unpublished work.

18.     The LASD violated the Bane Act by subjecting Plaintiff to physical and verbal abuse aimed at intimidating and retaliating against Plaintiff for exercising his constitutional rights under the First, Fourth, and Fifth Amendments.

19.     With this civil rights suit, Plaintiff seeks declaratory relief for the violation of his constitutional rights, compensatory and punitive damages for Defendants' unlawful actions, and injunctive relief directing the County to implement an effective policy to train its deputies on the First Amendment right of the press and public to record police activity in public locations, and to appropriately discipline deputies who violate this constitutional right.

/  /  /

/  /  /

## IV.    FACTUAL BACKGROUND

### A. The District Attorney Announces No Charges for Section 409 Citations

20.    On June 8, 2020, Los Angeles County District Attorney Jackie Lacey issued a written "news release" announcing that she would not charge anyone arrested for failure to disperse during anti-police brutality street protests that erupted across Los Angeles in 2020. Exhibit A. "Los Angeles District Attorney Jackie Lacey announced today that she will not file charges against any protester for […] failure to disperse. […] 'I believe whole-heartedly in free speech and support the right of protesters to demonstrate peacefully against historic racial injustice in our criminal justice system and throughout our nation.'" *Id*.

### B. The Illegal Arrest of Plaintiff

21.    On the evening of September 8, 2020, Plaintiff was filming a small, peaceful protest of about 50 to 75 people at the intersection of Normandie Avenue and Imperial Highway in South Los Angeles.  At the time, Plaintiff was working as a photojournalist for the California State University, Long Beach's school's *Daily Forty-Niner* newspaper and as a freelance photographer.

22.    Around 8 p.m., the LASD issued a notice of unlawful assembly and ordered for the crowd to disperse.  The protesters ran away from LASD deputies down Normandie Avenue within minutes of the LASD's order.

23.    Plaintiff left the scene of the protest to film the protesters as they fled down Normandie Avenue, who were followed by deputies riding in a truck and on foot. After the crowd had dispersed, Plaintiff began walking alone on the sidewalk to return to his car.  Suddenly, without warning, he was seized by an LASD deputy in front of an apartment building at 1316 110th Street, about a half-block from Normandie Avenue.  Plaintiff's arrest was about six blocks away from where the protest had taken place and had dispersed at the intersection of Imperial Highway and Normandie Avenue, as can be seen on a Google map (Exhibit B) and described in the LASD Incident Report. Exhibit C.

24.     Plaintiff repeatedly identified himself as a member of the press, showing his school press ID card and offering to have deputies call his journalism school supervisor.  The deputy ignored him and arrested him anyway.  Deputies seized Plaintiff's iPhone 11 and Nikon D800, both of which he used to film the protest and deputies' actions.

25.     The protesters can be seen fleeing LASD deputies after the dispersal order in this live-streamed video https://www.youtube.com/watch?v=t3iFkuOWpYY

26.     This video was taken by Hugo Padilla.  Mr. Padilla filmed part of the protest and its dispersal from his moving bicycle.  Deputies also arrested Mr. Padilla as he was filming on 110th Street, and his video possibly captures the sound of Plaintiff being arrested right next to Mr. Padilla in the final seconds of the video. As Mr. Padilla's video shows, 110th Street is deserted and dark when Mr. Padilla and Plaintiff were arrested there.

27.     Los Angeles Sheriff's Department deputies arrested Plaintiff without warning and without probable cause. Plaintiff was arrested for alleged "failure to disperse at an unlawful assembly" in violation of Penal Code § 409, a misdemeanor. There was no probable cause to arrest a reporter walking six blocks away from an already dispersed protest. Indeed, the District Attorney rejected the LASD's request to file a criminal complaint against Plaintiff and did not file any charges against Plaintiff within the one-year deadline, which expired on September 8, 2021.

28.     The LASD was well aware that just three months before deputies arrested Plaintiff, the Los Angeles County District Attorney announced that she would not charge anyone arrested for failure to disperse during anti-police brutality street protests. Ex. A. Deputies knew prosecutors would not charge Plaintiff. They arrested Plaintiff for no other reason than to harass and intimidate him, and to punish him for exercising his First Amendment right to photograph police performing their job in public and to gather and report the news.

## C. The Excessive Force and Intimidation Used Against Unzueta

29.     Deputies used excessive force in violation of the Fourth Amendment during their arrest and jailing of Plaintiff. Deputies tossed the handcuffed Plaintiff into a pepper ball-filled truck, causing the pepper balls to erupt and burn Plaintiff's eyes, mouth, face, and skin. Deputies latched his handcuffs so tightly that his hands became numb and he suffered a substantial loss of feeling in the palms of his hands for months after his release.

30.     After Plaintiff was restrained with handcuffs and thrown into a truck, at least one deputy called him a homophobic slur.  Some deputies held up smart phones that appeared to be their personal devices and appeared to be filming Plaintiff and the protesters who were also handcuffed and placed in the truck. When Plaintiff was taken to the LASD South Los Angeles Station to be booked and jailed, deputies photographed him and the other arrestees with what appeared to be a cell phone.

## D. The Out-of-Policy Refusal to Recognize Unzueta as a Reporter

31.     The LASD's refusal to recognize Plaintiff as a reporter despite his school press credential violated the requirement of the LASD *Manual of Policy and Procedures* for deputies to recognize reporters with press credentials other than those issued by the LASD. *See* LASD *Manual of Policy and Procedures*, Field Operations Directive, 20-21 Press Pass Identification. ("Credentials issued by the representative's agency or employer shall also be honored.") *See* http://pars.lasd.org/Viewer/Manuals/15183/Content/16296

## E. The Illegal Jailing and Strip-Search of Unzueta

32.     Plaintiff was arrested and jailed overnight for a non-violent offense – allegedly failing to disperse in response to the LASD's declaration of an unlawful assembly in violation of Penal Code § 904.

33.     Plaintiff was jailed at the South Los Angeles Sheriff's Station jail and then taken to the Twin Towers jail downtown just before dawn. At Twin Towers,

1  deputies strip-searched Plaintiff several times and put him in a jail jumpsuit.

2  Deputies then abruptly released Plaintiff on the morning of September 9, 2020.

3       34.     Plaintiff's overnight jailing violates California Penal Code § 853.6,

4  which requires deputies to release misdemeanor violators on their own recognizance

5  in the field or immediately after booking unless individualized probable cause exists

6  to believe that one or more exceptions to the statute exists as a basis to deny an O.R.

7  release. In this instance, there was no reason why Defendants could not process

8  Plaintiff in the field and release him without prolonged handcuffing. Both § 853.6 by

9  statute and the First Amendment by constitutional principle require in individualized

10  suspicion before fundamental rights may be denied.

11      35.     The jailing of Plaintiff also violates the LASD *Manual of Policy and*

12  *Procedures*, Line Procedures, Prisoners, 5-03/115.05 – Field Release of

13  Misdemeanor Prisoners, which provides that "[m]isdemeanor prisoners shall be

14  released in the field whenever it is reasonable and safe to do so," provided the

15  arrestee is not intoxicated or charged with a violent offense. *See*

16  http://pars.lasd.org/Viewer/Manuals/11719/Content/11787?showHistorical=True

17      **F. The Illegal Seizure and Search of Unzueta's Camera Memory Card**

18      36.     When the LASD released Plaintiff from Twin Towers, he asked for his

19  cell phone and Nikon D800 camera. But deputies did not release those two devices to

20  Plaintiff on that day.  Over the next several weeks, the LASD ignored repeated

21  requests from Plaintiff's counsel to return Plaintiff's Nikon D800 camera and

22  iPhone. Finally, the LASD told Plaintiff he could come and pick up his camera and

23  his cell phone. But LASD had illegally kept Plaintiff's cell phone for three months

24  and his camera for three weeks.

25      37.     When Plaintiff picked up his camera from the LASD, its memory card

26  was not inside the camera.  Plaintiff's camera memory card contained two years of

27  his video and photographs that he used for his work as a photojournalist. Because the

28  removal of the camera memory card requires a two-step process requiring manually

releasing two different springs, it is likely that the LASD purposely removed Plaintiff's camera memory card from his camera, searched the images, and confiscated the card.

38.    LASD Captain Duane Allen, who investigated the confiscation of Plaintiff's camera memory card, told Plaintiff's counsel during a phone call that it was "possible" that a deputy removed Plaintiff's camera card and lost it – "anything is possible," he said – and said Plaintiff could file a claim with the County.

**G. The Failure of Defendant LASD to Issue a Certificate of Detention**

39.    Defendant LASD provided Plaintiff with a Notice to Appear in Court for his alleged violation of Penal Code section 409.  When Plaintiff went to court on the date and time required, where he was informed that no charges had been filed against him.  No charges were ever filed against him and the one-year statute of limitations to file a misdemeanor charge expired on Sept. 8, 2021.

40.    Even though Plaintiff was never charged with a crime, Defendant LASD never sent a Certification of Detention to Plaintiff as required by Penal Code § 851.6(b). The statute requires a law enforcement agency to (1) issue a Certificate of Detention to anyone who has been arrested and released for an alleged misdemeanor and not charged and (2) change all references in law enforcement databases to state that the person was detained and not arrested.

**V.    COMPLIANCE WITH PRE-SUIT REQUIREMENTS**

41.    On March 8, 2021, within the limitation period after the claims herein arose, Plaintiff served a Notice of Claim on Los Angeles County in compliance with California Government Code § 911.2.

42.    On April 22, 2021, the County gave notice that it had rejected Plaintiff's claim.

43.    This action has been commenced within the applicable limitations period for the claims asserted herein.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – First Amendment to the U.S. Constitution

44.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

45.    Defendants' conduct, described above, violated Plaintiff's rights to freedom of speech and the press under the First Amendment to the United States Constitution.

46.    Plaintiff attended the September 8, 2020 protest as student journalist. By arresting Plaintiff and seizing his property despite his visible press badge and repeated assurances of his press status, Defendants violated Plaintiff's First Amendment rights to report on the protest as a member of the press.

47.    Defendants did not have probable cause to arrest Plaintiff. Even after LASD declared the protest an unlawful assembly, Plaintiff had the right to continue reporting on the protest. Plaintiff also complied with LASD orders by leaving the location where the unlawful assembly was declared. Deputies arrested him six blocks away from where the protest dispersed while he was walking alone on his way to his car. Plaintiff denies that he disobeyed any order to disperse, and he was not charged by the Los Angeles District Attorney's Office for any crime within the one-year statute of limitations that expired on September 8, 2021.

48.    Defendants violated Plaintiff's First Amendment rights of freedom of speech and press by arresting him for performing his job as a photojournalist to document the actions of deputies and protesters in a public place.

49.    Plaintiff suffered harm as a direct and proximate result of Defendants' actions, including but not limited to physical injury and pain and suffering. Plaintiff is entitled to recover compensatory damages directly and proximately caused by the Defendants' unlawful arrest.

**SECOND CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Fourth Amendment to the U.S. Constitution**

50.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

51.     Defendants' conduct, described above, including arresting Plaintiff, jailing Plaintiff, strip-searching Plaintiff, confiscating his camera and cell phone, searching his camera and memory card, throwing Plaintiff into a truck of pepper balls, and cuffing his hands so tightly he lost feeling in his hands for months, violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures, excessive or arbitrary force, and arrest or detention without reasonable or probable cause.

52.     The fact that Defendants have since returned his Nikon Camera and iPhone does not mitigate the harm; the seizure of Plaintiff's property itself was a violation of the Fourth Amendment.  And the LASD never returned Plaintiff's camera memory card.

53.     As a direct and proximate consequence of the Defendants' unlawful actions, Plaintiff has suffered loss of his personal property and is entitled to compensatory damages for his unlawfully seized property.

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Fifth Amendment to the U.S. Constitution**

54.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

55.     Defendants violated Plaintiff's Fifth Amendment rights by seizing his personal property and not returning his camera memory card despite repeated requests. While Defendant LASD has since returned Plaintiff's iPhone and camera, Defendant continues to hold Plaintiff's camera memory card. Defendant LASD denies possessing Plaintiff's memory card; however, this seems implausible. Plaintiff was actively photographing and videotaping the protest with his camera prior to his

arrest. He confirmed that his memory card was operating by looking at his viewfinder repeatedly. Removing the card requires two difficult steps: one step to push and activate a spring to open the door of the camera and another step to push and activate a spring to eject the memory card. This two-step process makes it all but impossible that the card popped out of Plaintiff's camera on its own, even if it was roughly handled or dropped on the ground.

56.     Because Defendants have not compensated Plaintiff for his property and have instead affected a *de facto* forfeiture of Plaintiff's property, the seizure of Plaintiff's camera memory card constitutes a "Taking" within the meaning of the Takings Clause of the Fifth Amendment to the United States Constitution.

57.     Plaintiff's camera memory card contained two years of Plaintiff's freelance photography work, which is impossible to replace and of significant economic value to Plaintiff. Because the Defendants affected a taking of personal property without payment of compensation, Plaintiff is entitled to recover the reasonable value of his property defendants seized.

### FOURTH CLAIM FOR RELIEF

### Privacy Protection Act of 1980 – 42 U.S.C. § 2000aa

58.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

59.     Defendants violated the Privacy Protection Act of 1980 ("PPA") by seizing Plaintiff's work product materials which Plaintiff collected to disseminate to the public as a photojournalist and failing to return his camera memory card containing his work product. The PPA makes it illegal for a government officer or employee "to search for or seize any work product materials" or documentary materials, related to the prosecution or investigation of a criminal offense, "possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, . . . broadcast, or other similar form of public communication." 42 U.S.C. § 2000aa(a), (b).

60.     None of the exceptions listed under the PPA are applicable to Plaintiff. There is no reason to believe the seizure of his camera and iPhone was necessary to prevent death or serious bodily injury. Nor was there reason to believe that notice of a subpoena for his devices would result in their destruction.

61.     As a photojournalist, the Plaintiff used his iPhone and camera to record the September 8, 2020 protest in order to share that information with the public. Therefore, the Defendants' seizure of Plaintiff's iPhone, camera, and confiscating and search of his camera memory card was in direct violation of the PPA.

62.     Therefore, Plaintiff is entitled to recover compensatory damages proximately caused by Defendants' invasion of Plaintiff's privacy.

## FIFTH CLAIM FOR RELIEF

### Violation of the Bane Act – Cal. Civil Code § 52.1

63.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

64.     California Civil Code, Section 52.1 (the Bane Act) states "if a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States […] may institute and prosecute in his […] own name on his […] behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct." Cal. Civ. Code §52.1.

65.     As alleged herein, LASD arrested and intimidated Plaintiff in order to interfere with Plaintiff's right to report on the protest and right to maintain his personal possessions.

66.    By unlawfully arresting Plaintiff and seizing his property while he exercised his First Amendment right to document a protest, jailing him, strip-searching him, calling him a homophobic slur, throwing him into a truck filled with pepper balls, using personal cell phones to film or photograph Plaintiff after he was arrested, LASD deputies used threat and intimidation to interfere with Plaintiff's rights secured under the Constitution of the United States. LASD deputies intentionally exercised threat and intimidation against Plaintiff to punish him for filming and reporting about the September 8, 2020 protest. The Defendants' actions violated the Bane Act.

67.    Plaintiff is entitled to an injunction pursuant to California Civil Code §52.1. Plaintiff is also entitled to damages pursuant to Civil Code §§ 52 and 52.1.

## SIXTH CLAIM FOR RELIEF

### Violation of California Shield Law – Evidence Code § 1070 and Article 1, § 2(b) of California Constitution

68.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

69.    The California Shield Law codified in the Evidence Code § 1070 and Article 1, § 2(b) of the California Constitution states that "a publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, or by a press association or wire service, or any person who has been so connected or employed, cannot be adjudged in contempt by a judicial, legislative, administrative body, or any other body having the power to issue subpoenas, for refusing to disclose, in any proceeding as defined in Section 901, the source of any information procured while so connected or employed for publication in a newspaper, magazine or other periodical publication, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public." West's Ann. Cal. Evid. Code § 1070.

70.    Defendants violated Plaintiff's rights under the California Shield code by seizing Plaintiff's iPhone, camera, and memory card and failing to return his camera memory card.  Plaintiff's iPhone and camera memory card contain unpublished information that was gathered for reporting purposes. Defendants kept his memory card containing two years of videos and photographs that are mostly unpublished.

### SEVENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Fourteenth Amendment to the U.S. Constitution

71.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

72.    Plaintiff had a liberty interest created by the California Penal Code § 853.6 to be cited and released for a misdemeanor absent specific information and individualized suspicion that they would immediately repeat the allegedly unlawful conduct if promptly released and not subjected to a prolonged detention. Defendants' conduct deprived Plaintiff of liberty without due process of law under the Fourteenth Amendment to the United States Constitution. Plaintiff was uniformly denied the mandatory "liberty" interest codified at California Penal Code § 853.6 when he was denied individualized assessment and held in custody overnight.

### EIGHTH CLAIM FOR RELIEF

### Violation of California Penal Code § 851.6(b)

73.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

74.    LASD violated Plaintiff's rights by not issuing him a Certificate of Detention after he was released from custody on the misdemeanor citation and the District Attorney declined to press charges against him, both when the case was presented to the District Attorney by the LASD and before the one-year statute of limitations expired on September 8, 2021, as required by California Penal Code § 851.6(b).

**REQUEST FOR RELIEF**

Wherefore, Plaintiff seeks judgment as follows:

75.     A preliminary and permanent injunction restraining Defendants from engaging in the unlawful and unconstitutional actions detailed above;

76.     A preliminary and permanent injunction requiring Defendant LASD to undergo annual training on the First Amendment rights of journalists;

77.     A preliminary and permanent injunction requiring Defendant LASD to adopt the following policies and practices: (1) all LASD employees are barred from opening any reporter's smart phones, computers, cameras, or other devices during a detention or arrest without a lawful subpoena or warrant that informs the judge that the device is owned by a journalist; (2) all LASD employees are required to return cameras, camera memory cards, cell phones, laptops, and other electronic devices taken from reporters within 48 hours of an arrest; and (3) all LASD employees must cite and release reporters on their own recognizance if arrested for non-violent citations while reporting about or filming public events;

78.     A preliminary and permanent injunction ordering LASD to issue a Certificate of Detention to Plaintiff as required by Penal Code § 851.6(b) and change all references in law enforcement databases to Plaintiff's arrest as a "detention."

79.     A declaratory judgment that Defendants' conduct detailed herein was a violation of the rights under the Constitution and laws of the United States and California and of Plaintiff;

80.     General and compensatory damages for Plaintiff for the violations of his federal constitutional and statutory rights, all to be determined according to proof;

81.     Punitive damages for Plaintiff according to proof;

82.     An award of attorneys' fees pursuant to 42 U.S.C. 1988;

83.     Costs of suit;

84.     Pre- and post-judgment interest as permitted by law;

85.     Such other and further relief as the Court may deem just and proper.

DATED:  October 22, 2021                                    Respectfully submitted,

                                                           s/ Susan E. Seager

                                           _____

                                                      By: Susan E. Seager
                                                      Attorney for Plaintiff